IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JESUS GARCIA             :      CIVIL ACTION
                         :
      v.                 :
                         :
BENJAMIN VARNER, et al.  :      No. 00-3668

MEMORANDUM

McLaughlin, J.                              June 18, 2014


        The petitioner, Jesus Garcia, is currently serving a
life sentence in Pennsylvania for his state conviction for
first-degree murder.  Garcia has filed this motion, pursuant to
Federal Rule of Civil Procedure 60(b)(6), to reopen the Court's
March 29, 2011 Order denying his petition for a writ of habeas
corpus.  Garcia argues that the Supreme Court's recent decisions
in Trevino v. Thaler and McQuiggin v. Perkins constitute
"extraordinary circumstances" that warrant relief under Rule
60(b)(6).  Garcia also seems to make an argument that the Court
should have equitably tolled the statute of limitations due to
inaccurate advice from his PCRA counsel.  For the following
reasons, the Court will deny Garcia's motion.

I.    Background

        On March 24, 1992, Garcia was convicted of first-
degree murder[1] and sentenced to life in prison.  Garcia appealed
the conviction to the Superior Court, arguing that the trial
court committed reversible error by denying a motion to sever.
On April 12, 1994, the Superior Court affirmed the conviction,
finding that Garcia failed to present the severance issue in his
pretrial and post-verdict motions.  Garcia did not appeal to the
Pennsylvania Supreme Court.

        On January 6, 1997, Garcia filed a petition pursuant
to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.
Cons. Stat. §§ 9541-9551.  An amended petition was filed by
appointed counsel on August 13, 1997, arguing that trial counsel
was ineffective.  Garcia's petition was dismissed, and the
Superior Court affirmed on December 31, 1998.  On October 20,
1999, the Pennsylvania Supreme Court denied Garcia's petition
for allowance of appeal.

        On July 21, 2000, Garcia filed a petition seeking
federal habeas relief pursuant to 28 U.S.C. § 2254.  Garcia
asserted two grounds for habeas relief: (1) ineffective
assistance of counsel for failing to properly preserve the issue
of severance; and (2) ineffective assistance of counsel for

_____

        [1] Garcia was also convicted of robbery, conspiracy,
possession of an instrument of crime, and violating the Uniform
Firearms Act.

2

failing to investigate and interview witnesses for the purpose of providing an intoxication defense.

United States Magistrate Judge Jacob P. Hart issued a Report and Recommendation ("R&R") on January 30, 2001 recommending that the Court dismiss Garcia's federal habeas petition as untimely (Docket No. 13).  Magistrate Judge Hart concluded that the one-year statute of limitations period under 28 U.S.C. § 2244(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applied to Garcia's petition, and that the one-year period began to run on April 24, 1996.[2]  That period was tolled while Garcia's PCRA petition was pending in state court.  The clock began ticking again on October 20, 1999, when the Pennsylvania Supreme Court denied allocator.  At that point, Garcia had three and one-half months remaining to file his federal habeas petition.  Because Garcia did not file his § 2254 petition until nine months after allocator was denied, Magistrate Judge Hart recommended that the petition be dismissed as untimely.  The R&R also noted that Garcia "has provided no explanation for his failure to comply with the limitations period" and therefore found no reason to equitably toll the statute of limitations.

---

[2] Garcia's conviction became final on May 12, 1994, when his time to seek review by the Pennsylvania Supreme Court elapsed. The R&R explained that, because Garcia's conviction became final prior to the passing of AEDPA, the one-year period did not begin to run until the date on which AEDPA was passed.

By Order dated March 29, 2001 (Docket No. 16), the Honorable John P. Fullam approved and adopted the R&R and dismissed Garcia's federal habeas petition as untimely.  Judge Fullam also declined to issue a certificate of appealability, and on March 25, 2002, the Third Circuit denied Garcia's application for a certificate of appealability.  See Order, Garcia v. Varner, No. 01-1927 (3d Cir. Mar. 22, 2002) (Docket No. 20).

In 2009, Garcia filed a counseled petition for leave to file a second petition for habeas corpus relief pursuant to 28 U.S.C. § 2244(b)(3) with the Third Circuit.  Garcia sought relief based on newly discovered evidence which consisted of some of the same affidavits previously submitted, as well as several new affidavits and a report from Dr. Pietro Miazzo, regarding Garcia's intoxication defense.  On July 30, 2009, the Third Circuit denied Garcia's application for leave to file a second habeas petition because the Court found that Garcia had not made a prima facie showing that his claim was based on "a new rule of constitutional law or newly discovered evidence that, if proven, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of his underlying offense."  Order, In re Garcia, No. 09-2824 (3d Cir. Jul. 30, 2009) (Docket No. 21).

In 2013, Garcia, acting pro se, filed another motion for leave to file a second or successive habeas petition claiming actual innocence based on <u>Miller v. Alabama</u>, 132 S. Ct. 2455 (2012), <u>Trevino v. Thaler</u>, 133 S. Ct. 1911 (2013), and <u>McQuiggin v. Perkins</u>, 133 S. Ct. 1924 (2013).  On August 21, 2013 the Third Circuit denied Garcia's application, holding that <u>Miller</u> does not apply to Garcia because he was not under the age of 18 when he committed his crime, and that Garcia's claims based on <u>Trevino</u> and <u>McQuiggin</u> could be pursued in a Rule 60(b) motion filed in the district court without prior authorization from the Third Circuit.  Order, <u>In re Garcia</u>, No. 13-2968 (3d Cir. Aug. 8, 2013) (Docket No. 22).  In accordance with the Third Circuit's Order, Garcia filed this motion pursuant to Fed. R. Civ. P. 60(b) on November 7, 2013.

II.   <u>Discussion</u>

A.   <u>Rule 60(b) Motion Standard</u>[3]

Rule 60 of the Federal Rules of Civil Procedure regulates the procedures by which a party may obtain relief from

---

[3] Because the Third Circuit explained that Garcia could seek relief from the district court in a 60(b) motion based on <u>Trevino</u> and <u>McQuiggin</u> without seeking leave to file a second or successive habeas petition, the Court is satisfied that Garcia's motion is not a second or successive habeas petition.  Garcia's arguments that the district court erred in denying his original federal habeas petition as untimely are not equivalent to a successive habeas petition.  See <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 531 (2005).

a final order or judgment.  Garcia explicitly states that he is moving for relief under Rule 60(b)(6), under which a court may relieve a party from a final judgment, order, or proceeding for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  A motion brought under Rule 60(b)(6) must be brought "within a reasonable time."  Fed. R. Civ. P. 60(c)(1).  A motion filed under Rule 60(b)(6) more than one year after final judgment is generally untimely unless "exceptional circumstances" justify the delay.  United States v. Martinez-Hernandez, No. 98-273, 2012 WL 6061126, at *2 (E.D. Pa. Dec. 6, 2012) (citing Ackerman v. United States, 340 U.S. 193, 202 (1950)); see also Gordon v. Monoson, 239 F. App'x 710, 713 (3d Cir. 2007).

Also, in order to obtain relief under Rule 60(b)(6), a petitioner must show the existence of "extraordinary circumstances."  Gonzalez v. Crosby, 545 U.S. 524, 535 (2005); Budget Blinds, Inc. v. White, 536 F.3d 244, 255 (3d Cir. 2008). A showing of extraordinary circumstances involves a showing that, without relief from the judgment, "an 'extreme' and 'unexpected' hardship will result."  Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977).  "Such circumstances will rarely occur in the habeas context."  Gonzalez, 545 U.S. at 535.

B.   <u>Trevino v. Thaler</u>

It appears that Garcia has conflated procedural default with the federal habeas time-bar.  For example, after discussing procedural default, Garcia writes that "[p]etitioner's procedural default was not meeting the requirements of the AEDPA's 1-year statute of limitations requirement provided under 28 U.S.C. § 2244(d)(1)(A)."  Pet'r's Mot. 36.  Garcia also explains that his original § 2254 petition was dismissed "as being procedurally defaulted pursuant to the Antiterrorism and Effective Death Penalty Act's ("AEDPA") 1-year statute of limitations."  <u>Id.</u> at 32.  Garcia goes on to argue that the Supreme Court's decision in <u>Trevino v. Thaler</u>, 133 S. Ct. 1911 (2013), constitutes an extraordinary circumstance justifying relief under 60(b)(6) from the Court's March 2001 Order dismissing his original habeas petition.

<u>Trevino v. Thaler</u>, and the other cases Garcia discuss concerning procedural default, including <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991) and <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), have no application here.  In <u>Trevino</u>, the Supreme Court held that where a state procedural framework "makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . .'[a] procedural default will not bar a federal habeas court from

7

hearing a substantial claim of ineffective assistance at trial
if, in the initial-review collateral proceeding, there was no
counsel or counsel in that proceeding was ineffective.'"  133 S.
Ct. at 1921 (quoting Martinez, 132 S.Ct. at 1320).

   Garcia's federal habeas petition was dismissed solely
because it was barred by AEDPA's one-year statute of
limitations.  The Court's dismissal of Garcia's § 2254 petition
was not based, to any extent, on procedural default grounds.
Rule 60(b) permits challenges only to the manner in which
Garcia's habeas petition was denied.  See Gonzalez, 545 U.S. at
532.  Because Garcia's habeas petition was not denied for
procedural default, Trevino v. Thaler is not an extraordinary
circumstance that warrants relief from the Court's March 2001
Order.

  C. McQuiggin v. Perkins

   Garcia also argues that the Supreme Court's recent
decision in McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), is a
"clear and authoritative change" in the law permitting Rule
60(b) relief.  Pet'r's Mot. 32-34, 37-39.  McQuiggin held that a
state prisoner filing a first federal habeas petition may use a
claim of actual innocence as a basis for invoking the equitably
based "miscarriage of justice exception" to overcome the one-
year statute of limitations for filing a federal habeas

petition.  133 S. Ct. at 1934.  Garcia argues that, pursuant to McQuiggin, the Court should consider his actual innocence claim in making an assessment of whether AEDPA's 1-year statute of limitations should have been equitably tolled.

McQuiggin is not an extraordinary circumstance justifying 60(b)(6) relief, however.  "Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." Agostini v. Felton, 521 U.S. 203, 239 (1997).  The Supreme Court has held that a change in decisional law based on interpretation of the habeas statute of limitations did not constitute an extraordinary circumstance under Rule 60(b)(6) because the lower court had applied the prevailing interpretation at that time. See Gonzalez, 545 U.S. at 536 (finding that it was "hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation").

To the extent that McQuiggin reflects a different interpretation of the federal habeas statute of limitations relative to the precedent at the time of the dismissal of Garcia's habeas petition, McQuiggin does not constitute extraordinary circumstances justifying Rule 60(b)(6) relief. The courts in the Third Circuit have consistently held that the Supreme Court's decision in McQuiggin does not constitute an

extraordinary circumstance under Rule 60(b)(6).[4]  See, e.g.,
Williams v. Patrick, No. 07-776, 2014 WL 2452049, at *6 (Jun. 2,
2014); Pridgen v. Shannon, No. 00-4561, 2014 WL 1884919, at *3-4
(May 12, 2014); Akiens v. Wynder, No. 06-5239, 2014 WL 1202746,
at *2 (E.D. Pa. Mar. 24, 2014).  McQuiggin was decided twenty-
one years after Garcia was convicted and sentenced, and over
twelve years after this Court dismissed Garcia's habeas
petition, and is a "classic example of a legal development
occurring after a valid final judgment," which is not an
extraordinary circumstance justifying 60(b) relief.  See Akiens,
2014 WL 1202746, at *2.

Even if the Court were to consider the merits of
Garcia's 60(b) motion based on McQuiggin, it would not justify

---

[4] Garcia argues that "[p]recedents from this Honorable
Court's own law and Third Circuit Court law 'plainly allow Rule
60(b)(6) relief where there has been a clear-cut supervening
change in the law.'"  Pet'r's Mot. 36.  In support of that
argument, Garcia cites Harper v. Vaughn, 272 F. Supp. 2d 527,
532 (E.D. Pa. 2003) and Wilson v. Fenton, 684 F.2d 249, 251 (3d
Cir. 1982).  To the contrary, the court in Harper stated that,
"[a]lthough some courts have recognized that, under Rule
60(b)(6), in the exceptional case . . . an action may be
reinstated on account of an intervening change in the law,
intervening developments in the law by themselves rarely
constitute the extraordinary circumstances required for relief
under Rule 60(b)(6)."  272 F. Supp. 2d at 532 (internal
quotation marks and citations omitted).  Although Wilson noted
that "[a] decision of the Supreme Court of the United States or
a Court of Appeals may provide the extraordinary circumstances
for granting a Rule 60(b)(6) motion," 684 F.2d at 251 (emphasis
added), that case does not provide much guidance as to whether
McQuiggin is an extraordinary circumstance justifying relief
here.

reopening the case.  In McQuiggin, the Supreme Court held that a habeas petitioner could overcome AEDPA's one-year statute of limitations by meeting the actual innocence standard articulated in Schlup v. Delo, 513 U.S. 298 (1995).  The Schlup standard requires a petitioner to come forward with new, reliable evidence of actual innocence that is so powerful "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Schlup, 513 U.S. at 327.  Assuming that the actual innocence test is applicable here, where Garcia does not argue that he did not commit the crime but argues that he was responsible for a lesser degree of guilt, Garcia has not made a showing of actual innocence sufficient to meet the Schlup standard.  See Glass v. Vaughn, 65 F.3d 13, 16 (3d Cir. 1995) ("The Supreme Court has not decided whether the actual innocence test is applicable in a noncapital case when there is evidence that defendant committed the crime but argues that he or she was responsible for a lesser degree of guilt.").

In his 60(b) motion, Garcia mentions the following pieces of evidence that became available after Garcia's trial and conviction: (1) an affidavit from Juan Soto dated August 8, 1997; (2) an affidavit from Wilson Garcia dated August 8, 1997; (3) an affidavit from Elsa Hernandez dated August 8, 1997; (4)

an affidavit from Juan Rodriguez dated June 20, 2000;[5] and (5) a report from Dr. Miazzo dated March 17, 2009.  Pet'r's Mot. 16-17.  The Court also assumes that Garcia means to refer to Juan Soto's March 2, 2008 affidavit disclosing that Soto put Xanax in the beer Garcia consumed on February 6, 1991.[6]  Garcia has not attached any of these documents with his 60(b) motion, but all of them have been presented by Garcia with prior petitions.[7]  Nor does Garcia set forth an argument as to why this evidence meets the Schlup standard for actual innocence.

        Garcia's 2009 petition for leave to file a second or successive petition for habeas corpus relief pursuant to 28 U.S.C. § 2244(b)(3) made the same argument regarding newly discovered evidence of actual innocence that he sets forth here: that the combination of drugs Garcia had taken prior to the murder rendered him incapable of forming the specific intent required for a first-degree murder conviction, and that he was not aware of all of the drugs he had taken until after the

---

[5] Rodriguez's 2000 affidavit was submitted with Garcia's original federal habeas petition, but it does not appear that Rodriguez signed the affidavit.  See Resp't's Resp. Exh. A ("2000 Habeas Petition").

[6] Garcia states that the evidence shows "that Petitioner was subjected to drugs and alcohol without his knowledge," Pet'r's Mot. 16, but the only evidence that he was unaware of his intoxication is contained in Soto's 2008 affidavit.

[7] The respondents also attached all of the documents mentioned by Garcia as exhibits to their response to Garcia's 60(b) motion.

trial.[8]  <u>See</u> Pet'r's Mot. 23; Resp't's Resp. Exh. C ("2009
Petition").

All of the evidence mentioned by Garcia was before the
Third Circuit when it denied Garcia's 2009 petition for leave to
file a second or successive habeas petition.  Upon consideration
of this evidence, the Third Circuit held that Garcia had not
"made a prima facie showing that his claim rests on a new rule
of constitutional law or newly discovered evidence that, if
proven, would be sufficient to establish by clear and convincing
evidence that no reasonable factfinder would have found him
guilty of his underlying offense."  Order, <u>In re Garcia</u>, No. 09-
2824 (3d Cir. Jul. 30, 2009) (Docket No. 21).  This Court finds
no reason to depart from the Third Circuit's conclusion that, in
light of the evidence mentioned by Garcia, no reasonable juror
could have convicted Garcia of first-degree murder.[9]

_____

[8] Evidence that Garcia was intoxicated was presented to the
jury, and the jury was instructed that intoxication could reduce
the degree of guilt from murder of the first degree.  <u>See</u> 2000
Habeas Petition at 7-8.
[9] The 1997 Hernandez affidavit, the 1997 Wilson Garcia
affidavit, and the 2000 unsigned Rodriguez affidavit were not
specifically included in Garcia's 2009 petition, but were part
of the record before the Third Circuit.  Even if they were not
considered by the Third Circuit, this Court is not convinced
that these affidavits would change the outcome.  Hernandez's
affidavit does not speak to Garcia's condition, or capability of
forming specific intent, on February 6, 1991.  Wilson Garcia's
1997 affidavit states that he observed that Garcia was "high" on
February 6, 1991, but it does not contain any new information
that was not specifically presented to the Third Circuit, and
considering that a delay in presenting new evidence bears on its

D.   <u>Equitable Tolling</u>

Garcia alleges in his 60(b) petition that he received
a letter from his PCRA counsel, Mitchell Scott Strutin, dated
October 23, 1999, that advised:

> The Supreme Court denied allowance of appeal.  A copy
> of the order is enclosed.  This terminates my
> representation of you in this matter.  You have on
> year in which to file for habeas corpus relief in the
> federal court.

Pet'r's Mot. 23; Pet'r's Traverse 27.

To the extent that Garcia sets forth a claim for
equitable tolling of the AEDPA limitations period, that claim is
untimely.  Garcia presumably knew of his PCRA counsel's advice
at the time his original habeas petition was filed.  Garcia did
not mention his counsel's inaccurate advice in his original
petition or in either of his petitions to the Third Circuit for
leave to file a second or successive habeas petition.  Garcia
could have asserted this argument regarding his PCRA counsel's

---

credibility, <u>McQuiggin</u>, 133 S. Ct. at 1935-36, the Court is not
convinced that no reasonable juror would have convicted Garcia
in light of Wilson Garcia's affidavit.  Furthermore, the Court
is doubtful that either of these affidavits is "newly
discovered" evidence.  Elsa Hernandez testified at Garcia's
trial, and Wilson Garcia was available to testify.  Garcia
presumably would have known at the time of his trial that
Hernandez and Wilson Garcia had observed him while he was under
the influence of drugs.  Finally, even if Rodriguez's 2000 were
a signed and verified statement, which it does not appear to be,
it does not provide any new relevant, reliable information, but
merely states that Rodriguez "knows for a fact that drugs
contributed to the terrible ordeal."  <u>See</u> 2000 Habeas Petition,
Exhs. A-C.

14

inaccurate advice on the statute of limitations in an earlier 60(b) motion, but he did not do so until more than twelve years after his original habeas petition was denied.

Even if Garcia had raised the argument earlier, equitable tolling would not apply.  An attorney's miscalculation of the statute of limitations period "is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."  Lawrence v. Florida, 549 U.S. 327, 336-37 (2007); see also LaCava v. Kyler, 398 F.3d 271, 276 (3d Cir. 2005) ("We have stated that '[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary circumstances" required for equitable tolling.'").  The Third Circuit has specifically rejected a prisoner's reliance on a letter from counsel erroneously advising that he had one year to file a federal habeas petition as a basis for equitable tolling of the AEDPA statute of limitations.  See Johnson v. Hendricks, 314 F.3d 159, 162-63 (3d Cir. 2002), cert. denied, 538 U.S. 1022 (2003).

III. Conclusion

For the foregoing reasons, the Court denies the petitioner's 60(b) motion.  An appropriate order shall issue separately.